UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

KIMBERLY D. NEEVEL,

    Plaintiff,

    v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA;

LIFEPOINT CORPORATE SERVICES,
GENERAL PARTNERSHIP;

and

LIFEPOINT HOSPITALS, INC.
WELFARE BENEFITS PLAN,

    Defendants.

COMPLAINT
Case Number: 19-CV-1589

Plaintiff, Kimberly D. Neevel, bases her Complaint against Defendants, Unum Life Insurance Company of America, LifePoint Corporate Services, General Partnership, and LifePoint Hospitals, Inc. Welfare Benefits Plan (collectively Defendants) on the following allegations:

### NATURE OF THE CASE

1. Plaintiff, Kimberly D. Neevel, brings suit under the Employee Retirement Income Security Act of 1974, ("ERISA") [29 U.S.C. §1001 *et. seq.*] against Defendants, Unum Life Insurance Company of America, LifePoint Corporate Services, General Partnership, and LifePoint Hospitals, Inc. Welfare Benefits Plan, to recover disability benefits including short-term disability (STD) and long-term disability (LTD) benefits pursuant to a disability benefit plan.

## JURISDICTION AND VENUE

2. Jurisdiction over Kimberly D. Neevel's ERISA claim is conferred on this Court by 28 U.S.C. §1331, and ERISA §502(e)(2); [29 U.S.C. §1132(e)].

3. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. §1391, in that the Defendants, Unum Life Insurance Company of America and LifePoint Corporate Services, General Partnership, reside in the Eastern District or can be found in the Eastern District.

## CONDITIONS PRECEDENT

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## PARTIES

5. Plaintiff, Kimberly D. Neevel (Neevel), is an adult resident of Wisconsin.

6. Defendant, Unum Life Insurance Company of America (Unum) is headquartered at 2211 Congress Street, Portland, ME, 04122 and licensed by the State of Wisconsin to sell disability insurance to the public, has had significant and continuous business contacts throughout the State of Wisconsin, can be found in Wisconsin, and maintains its registered agent at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

7. Defendant, LifePoint Corporate Services, General Partnership (LifePoint) is headquartered at 330 Seven Springs Way, Brentwood, TN 37027 and operates a national network of hospitals and other medical service providers, including in the State of Wisconsin, has had significant and continuous business contacts throughout Wisconsin, and can be found in Wisconsin.

8. Defendant, LifePoint Hospitals, Inc. Welfare Benefits Plan (the Plan), is part of an ongoing administrative scheme for the specific purpose of providing disability income and

systematically deferred income to Plan participants past the termination of their employment from LifePoint.

**OPERATIVE FACTS**

9. In 1992, Neevel commenced employment as a Registered Nurse at Watertown Regional Medical Center in Watertown, Wisconsin.

10. In or around 2015, LifePoint acquired Watertown Regional Medical Center.

11. As a benefit of her employment, LifePoint provided Neevel with group STD and LTD insurance policies, (the Plans).

12. As an employee of LifePoint, Neevel was a beneficiary under the Plans.

13. LifePoint has discretionary authority or discretionary responsibility in the administration of the Plans and is a fiduciary under the Plans.

14. Unum is the claims administrator for the Plans.

15. Unum has discretionary authority or discretionary responsibility in the administration of the Plans and is a fiduciary under the Plans.

16. The STD Plan is self-funded by LifePoint.

17. The LTD Plan is fully insured by Unum.

18. Unum operates under a conflict of interest because it is both the claims administrator and the insurer for the LTD Plan.

19. Unum's conflict of interest resulted in procedural unreasonableness in its handling of Neevel's claims for benefits.

20. Neevel's claim for STD benefits is governed by a written STD plan document with an insurance effective date of September 1, 2015.

21. Neevel's claim for LTD benefits is governed by a written LTD plan document with an insurance effective date of September 1, 2015.

22. To be eligible for disability benefits, a claimant must be disabled as defined by the Plans.

23. Under the Plans,

> You are disabled when Unum determines that:
>
> - you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> - you have a 20% or more loss in weekly earnings due to the same sickness or injury.

24. The Plans define "regular occupation" as "the occupation that you are routinely performing when your disability begins."

25. The Plans define "material and substantial duties" as:

> [D]uties that:
>
> - Are normally required for the performance of your regular occupation; and
>
> - Cannot be reasonably omitted or modified.

26. After an elimination period of five work days, the STD Plan provides for a weekly STD benefit of 60% of weekly earnings.

27. Upon receiving STD benefits under the STD Plan for the maximum benefit period of 136 days, a claimant who remains disabled as defined by the Plans becomes eligible for LTD benefits pursuant to the LTD Plan.

28. The LTD Plan provides for a monthly LTD benefit of 60% of monthly earnings.

29. Neevel suffers from several medical conditions, including rheumatoid arthritis (RA), fibromyalgia, interstitial lung disease (ILD), obstructive lung disease, Sjogren's Syndrome, and autoimmune neuropathy.

30. As a result of her medical conditions, Neevel experiences pain throughout her body, including in her neck and back, shoulders, wrists, hands, ankles, and feet.

31. Neevel's conditions also cause cramping in her hands and feet, swelling in her joints, tremors and numbness in her hands, muscle spasms and weakness, and severe fatigue.

32. As a result of her Sjogren's Syndrome, Neevel experiences excessively dry eyes and mouth, which causes chronic hoarseness, frequent loss of voice, difficulty swallowing, and a chronic dry cough.

33. As a result of her ILD and obstructive lung disease, Neevel experiences chest discomfort, dyspnea, shortness of breath, and lightheadedness or dizziness.

34. In August 2016, Neevel's primary care physician, Michael E. Sullivan, MD (Dr. Sullivan), strongly recommended that she stop working due to her worsening symptoms.

35. Despite Dr. Sullivan's recommendations, Neevel continued working, in order to maintain insurance coverage for her family.

36. By January 2017, Neevel's conditions had worsened to the extent that she could no longer tolerate her job duties.

37. On January 3, 2017, Neevel stopped working at LifePoint, due to her medical conditions, at the recommendation of her doctors.

38. On or around January 5, 2017, Neevel applied for STD benefits pursuant to the STD Plan.

39. On January 11, 2017, Dr. Sullivan completed an Attending Physician Statement (APS) in support of Neevel's STD claim, in which he reported, "Patient is limited to barely any activity due to pain and limitations from her RA. She suffers from swelling, pain, spasms, insomnia and forgetfulness."

40. On January 12, 2017, Unum approved Neevel's claim for STD benefits, payable effective January 11, 2017, through February 14, 2017.

41. Despite ceasing work, Neevel continued to experience significant joint pain, weakness, and fatigue, causing her to sleep up to twelve hours per day.

42. On January 30, 2017, Neevel's rheumatologist, Christie M. Bartels, MD (Dr. Bartels), noted on objective examination that Neevel exhibited tenderness at the left third proximal interphalangeal (PIP) joint, tenderness with trace swelling at the right third metacarpophalangeal (MCP) joint, tenderness at her bilateral metatarsophalangeal (MTP) joints with positive MTP squeeze, tenderness at the knee, tenderness to palpation of the dorsal scapula in the rhomboid area, and several tender myofascial points.

43. On February 17, 2017, Unum contacted Dr. Sullivan by telephone to discuss Neevel's conditions.

44. During the February 17, 2017 call, Dr. Sullivan advised Unum that Neevel remained "unable to work at all"; that "she cannot do very much because of the pain"; that she continued to experience "swelling, pain, spasms, insomnia, and forgetfulness"; and that he was continuing to advise her to remain out of work.

45. On February 20, 2017, Unum extended Neevel's STD benefit approval through March 27, 2017.

46. On March 27, 2017, Unum requested additional information from Dr. Sullivan regarding Neevel's conditions.

47. On or around March 28, 2017, Dr. Sullivan responded to Unum's March 27, 2017 request for additional information.

48. In his March 28, 2017 response, Dr. Sullivan advised Unum that he was advising Neevel to remain out of work beyond March 27, 2017, due to her "chronic fatigue and pain and swelling" and "increasing anxiety and depression."

49. In his March 28, 2017 response, Dr. Sullivan reported, "Patient activity is very limited due to all of the symptoms related to her RA," and that he "suggest[s] moving forward with long term disability."

50. When asked when he expected Neevel to be able to return to work on a part-time or full-time basis, Dr. Sullivan responded, "unknown – may never return."

51. On April 18, 2017, Neevel saw Dr. Sullivan for a follow-up appointment, during which she reported that she was still sleeping twelve hours per day, struggling with her fine motor skills, could not hold her cell phone, and could not get out of bed most days.

52. Based upon his April 18, 2017 examination of Neevel, Dr. Sullivan noted, "Still a very poor prognostic picture to return to work. In my opinion, you are totally disabled and cannot go back. You can barely get out of bed and to expect even part time work is unlikely."

53. On May 1, 2017, Unum terminated Neevel's STD benefits, effective March 27, 2017.

54. Unum's May 1, 2017 decision letter explained that it was terminating Neevel's STD benefits "[d]ue to the fact that there are no clinical findings to support a lack of functional capacity…"

55. On May 2, 2017, Neevel advised Unum that her treating physicians would not release her to return to work due to her chronic fatigue, and that she was sleeping twelve hours a day, could not perform fine motor activities, and had difficulty getting out of bed most days.

56. On May 11, 2017, Neevel saw Dr. Sullivan for a follow-up appointment, during which she reported that she was experiencing a recurrent loss of her voice with any talking, she fell asleep during her son's college commencement ceremony, she had not gotten dressed during the four days prior to her appointment, and she could no longer tolerate cleaning, laundry, or cooking.

57. Upon objective examination of Neevel on May 11, 2017, Dr. Sullivan noted tenderness across her upper chest at fibromyalgia trigger points, muscle spasms in her upper back and trapezius, muscle tenderness across fibromyalgia trigger points on back, painful to bend at waist with wincing, tender across anterior thighs, definite grip weakness bilaterally, reproducible pain on range of motion of arms and shoulders, and tenderness to posterior scapular bilaterally.

58. Based upon his May 11, 2017 examination of Neevel, Dr. Sullivan noted, "Your disability of chronic fatigue with physical manifestations related to multiple medical issues above has worsened since 1/2017. Again, feel you are totally disabled and unsure why denial of claim was made. You cannot work due to fatigue, shoulder and arm pain and weakness, and vocal fatigue."

59. On June 5, 2017, Neevel saw Dr. Bartels for a follow-up appointment, during which she reported she was only spending a maximum of five hours out of bed each day.

60. As of June 7, 2017, Neevel would have been eligible to transition from STD benefits and begin receiving LTD benefits.

61. In the summer of 2017, Neevel experienced multiple episodes of dizziness and fainting.

62. On September 11, 2017, Neevel saw Dr. Bartels for a follow-up appointment, during which she reported that she was having continued difficulties with pain and fatigue, and that she was spending most of her time in bed.

63. On or around October 25, 2017, Neevel filed an administrative appeal of Unum's denial of her STD benefits.

64. On November 11, 2017, Dr. Sullivan completed another APS, in which he reported that Neevel remained unable to return to work due to her symptoms, "including chronic pain, chronic fatigue, inability to talk, neuropathy, severe depression, and crippling physical limitations."

65. On the November 11, 2017 APS, Dr. Sullivan reported that Neevel's conditions were not responding to treatment.

66. On the November 11, 2017 APS, Dr. Sullivan opined, "Physical limitations are such that patient is unable to get out of bed most days and on the days she can her pain prevents her from walking, standing, or sitting for more than 30 minutes at a time."

67. On or around December 14, 2017, Unum referred Neevel's claim for a medical file review, to be completed by Tina Tirabassi, RN, an employee of Unum.

68. On or around December 15, 2017, Ms. Tirabassi completed her medical file review of Neevel's claim.

69. Ms. Tirabassi did not meet with or physically examine Neevel.

70. Ms. Tirabassi did not speak with any of Neevel's treating providers.

71. Based solely on a limited review of Neevel's medical records, Ms. Tirabassi concluded, "the data does not support an inability to perform the above level of functioning as of 3/28/17."

72. On December 18, 2017, Unum upheld its May 1, 2017 denial of Neevel's STD benefits.

73. Unum's December 18, 2017 decision was based on Ms. Tirabassi's medical file review.

74. At no time during Unum's review of Neevel's disability claim and appeal did it have the file reviewed by a physician.

75. Neevel was advised by Unum that because she did not exhaust her STD benefit eligibility under the STD Plan, she was not able to apply for LTD benefits under the LTD Plan.

76. Neevel was eligible for and entitled to receive STD and LTD benefits under the Plans.

77. In April 2019, the Social Security Administration (SSA) determined that as of January 4, 2017, Neevel was unable to engage in any substantial gainful activity due to her medical conditions.

78. As a result of the SSA's April 2019 determination, Neevel began receiving Social Security Disability Insurance benefits, effective July 2017.

79. Neevel has provided all information requested by Defendants regarding her claims under the Plans.

80. Defendants ignored clear medical evidence of Neevel's medical conditions, restrictions, functional impairments, and disability in denying her claims under the Plans.

81. Defendants unreasonably ignored Neevel's objective clinical evidence of functional loss and instead adopted the unsupported opinion of its nurse consultant without explaining why Neevel's evidence was not credible.

82. Defendants failed to provide a detailed explanation as to why they rejected the specific evidence in Neevel's file that shows she is disabled.

83. Upon information and belief, the Plans do not grant Unum discretion to determine benefit eligibility, and the review of Defendants' benefit denial is therefore under the *de novo* standard.

84. Defendants have arbitrarily, capriciously, and/or unreasonably refused to compensate Neevel her disability benefits pursuant to the Plans and ERISA.

85. Defendants' denial of Neevel's disability benefits caused her to suffer the loss of benefits and to incur expenses.

## CLAIM FOR RELIEF
## ERISA § 502 (a)(1)(B)

The allegations of this Complaint raise violations of ERISA §502(a)(1)(B), [29 U.S.C. §1132(a)(1)(B)] by Defendants' improper refusal to compensate Ms. Neevel her short-term and long-term disability benefits under the Plans.

Plaintiff, Kimberly Neevel, demands relief as follows:

A. Judgment against Defendants awarding Plaintiff damages for losses of benefits pursuant to the Plans and ERISA;

B. Judgment against Defendants awarding Plaintiff her costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting this claim, together with interest on said fees, pursuant to the ERISA §502(g)(1), [29 U.S.C. §1132(g)]; and

C. Such other relief as the Court deems just and equitable.

Dated this  29th  day of October, 2019.

        /s/ Brianna M. Covington
        Brianna Covington, SBN 1093864
        Alan C. Olson, SBN 1008953
        Alan C. Olson & Associates, S.C.
        Attorneys for Plaintiff
        2880 S. Moorland Rd.
        New Berlin, WI  53151
        Telephone: (262) 785-9606
        Fax: (262) 785-1324
        Email: BCovington@Employee-Advocates.com
        Email: AOlson@Employee-Advocates.com